**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Alan Wilson, Securities Commissioner of South Carolina, Respondent,

v.

Integrated Capital Strategies, LLC, Appellant.

Appellate Case No. 2014-001652

————

Appeal From Richland County
G. Thomas Cooper, Jr., Circuit Court Judge

————

Opinion No. 2018-UP-289
Heard May 4, 2016 – Filed June 27, 2018

————

**REVERSED**

————

James Mixon Griffin and Margaret N. Fox, both of Griffin Davis, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Securities Commissioner Tracy A. Meyers, and Assistant Attorney General Ian Parks Weschler, all of Columbia, for Respondent.

————

**MCDONALD, J.:**  Integrated Capital Strategies, LLC (ICS) argues the circuit court erred in (1) finding the Attorney General (as Securities Commissioner) had

jurisdiction over ICS, (2) finding a subpoena for records was properly served and enforceable, and (3) considering a document the Attorney General submitted in camera and filed under seal.  As the records subpoena was not properly served, we reverse.

ICS is a corporation organized under Delaware law with its principal place of business in Charlotte, North Carolina.  ICS's member-managers founded CertusHoldings (CertusHoldings)—formally known as Blue Ridge Holdings, Inc.—a Delaware corporation with its principal place of business in Atlanta, Georgia.  CertusBank, a wholly owned subsidiary of CertusHoldings, was a nationally chartered bank with over thirty branches in South Carolina, North Carolina, Georgia, and Florida.[1]  CertusBank was headquartered in Greenville, South Carolina.[2]  Until their termination in April of 2014, ICS's member-managers were employees of Certus.[3]  There is no dispute that ICS provided services to Certus, both at the Greenville headquarters and elsewhere.

---

[1] In the circuit court's order requiring compliance with the subpoena (Order Requiring Compliance), CertusHoldings and CertusBank are collectively referred to as "Certus."  Thus, for the purposes of this opinion, "Certus" refers to both CertusHoldings and CertusBank.

[2] CertusBank has ceased operations.  Although it surrendered its charter as a National Bank in November 2015, related litigation remains ongoing. *See Jones v. CertusBank N.A. and CertusHoldings, Inc.*, Case No. 6:18-cv-00849 (U.S. Dist. Ct. South Carolina).  This litigation, pending in U.S. District Court, holds in abeyance Appellate Case No. 2018-000212 in this court, which seeks to appeal the denial of a motion to vacate certain judgments entered following employment litigation arbitration awards.

[3] ICS admits the following:  "The Operating Agreement executed between CertusBank and the [Office of the Comptroller of the Currency (OCC)] clearly provides that CertusBank was authorized to engage ICS to perform contractual services.  At the time the Operating Agreement was executed, the founders of CertusBank were Members of ICS and principal negotiators of the underlying transaction that led to the founding of CertusBank.  ICS's Members did in fact found and serve as executives of CertusBank.  The Stock Purchase Agreement . . . between CertusHoldings and the company's investors similarly provides that CertusBank could engage ICS to perform services."

The Securities Division of the Office of the Attorney General of South Carolina (Securities Division) began investigating whether Certus had violated South Carolina securities laws. As part of this investigation, the Securities Division issued an administrative subpoena (the Subpoena) to ICS via Federal Express on April 9, 2014.[4] The Securities Division sent the Subpoena to ICS's Charlotte address, as listed on the website of the North Carolina Secretary of State. The Subpoena required that ICS produce various documents related to the ongoing investigation into the offer and sale of securities by Certus in and from South Carolina, as well as documents relevant to services performed by ICS for Certus.

ICS objected to the Subpoena, arguing the Securities Commissioner lacked authority to investigate either CertusBank or CertusHoldings because both were regulated by federal law pursuant to the National Bank Act, 12 U.S.C. § 21, and the Bank Holding Company Act, 12 U.S.C. § 1841. ICS also alleged improper service.

Following a hearing, the circuit court ordered compliance with the Subpoena (Order Requiring Compliance). The circuit court denied ICS's subsequent motion for reconsideration.

**Service of the Subpoena**[5]

---

[4] The Attorney General, as ex officio Securities Commissioner (Securities Commissioner), has the statutory authority to "conduct public or private investigations within or outside of this State which the Securities Commissioner considers necessary or appropriate to determine whether [an entity] has violated, is violating, or is about to violate" the South Carolina Securities Act. S.C. Code Ann. §§ 35-1-601(a), -602(a)(1) (Supp. 2015).

[5] Upon receipt of the notice of appeal, this court requested that ICS and the Securities Commissioner file memoranda addressing the issue of appealability of the Order Requiring Compliance. Because the Order Requiring Compliance ended the circuit court case, it is distinguishable from typical orders compelling discovery. *See* S.C. Code Ann. § 14-3-330(3) (1976) (stating "[a] final order affecting a substantial right made in any special proceeding or upon a summary application in any action after judgment" is immediately appealable); *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 873 n.21 (D.C. Cir. 1977) (holding "it is settled that an order of a . . . court granting or denying an agency's petition for enforcement of a subpoena is final and appealable").

ICS contends the circuit court erred in finding ICS was properly served with the Subpoena; thus, the circuit court also erred in finding the Securities Commissioner has jurisdiction over ICS.  We agree.

"The trial court's findings of fact regarding validity of service of process are reviewed under an abuse of discretion standard."  *Graham Law Firm, P.A. v. Makawi*, 396 S.C. 290, 294–95, 721 S.E.2d 430, 432 (2012).

Under South Carolina's Uniform Securities Act, "[i]t is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: . . . to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person."  S.C. Code Ann. § 35-1-501(3) (Supp. 2015).  To investigate such violations, the Securities Commissioner retains the power to "subpoena witnesses, seek compulsion of attendance, take evidence, require the filing of statements, and require the production of any records that the Securities Commissioner considers relevant or material to the investigation."  S.C. Code Ann. § 35-1-602(b) (Supp. 2015).

Here, the Securities Division subpoenaed ICS as part of an investigation into whether Certus violated South Carolina securities laws.  The Securities Division chose to serve the subpoena on ICS pursuant to section 35-1-611 of the South Carolina Code (Supp. 2015), which provides:

> (a) A consent to service of process complying with this section required by this chapter must be signed and filed in the form required by a rule or order under this chapter. A consent appointing the Securities Commissioner the person's agent for service of process in a noncriminal action or proceeding against the person, or the person's successor or personal representative under this chapter or a rule adopted or order issued under this chapter after the consent is filed, has the same force and validity as if the service were made personally on the person filing the consent.  A person that has filed a consent complying with this subsection in connection with a previous application for registration or notice filing need not file an additional consent.
>
> (b) If a person, including a nonresident of this State, engages in an act, practice, or course of business

prohibited or made actionable by this chapter or a rule adopted or order issued under this chapter and the person has not filed a consent to service of process under subsection (a), the act, practice, or course of business constitutes the appointment of the Securities Commissioner as the person's agent for service of process in a noncriminal action or proceeding against the person or the person's successor or personal representative.

(c) Service under subsection (a) or (b) may be made by providing a copy of the process to the office of the Securities Commissioner, but it is not effective unless:

(1) the plaintiff, which may be the Securities Commissioner, promptly sends notice of the service and a copy of the process, return receipt requested, to the defendant or respondent at the address set forth in the consent to service of process or, if a consent to service of process has not been filed, at the last known address, or takes other reasonable steps to give notice; and

(2) the plaintiff files an affidavit of compliance with this subsection in the action or proceeding on or before the return day of the process, if any, or within the time that the court, or the Securities Commissioner in a proceeding before the Securities Commissioner, allows.

The Securities Division acknowledged ICS was not a target of the investigation. ICS has no South Carolina investors and has not sold, offered for sale, or registered to sell securities in South Carolina. ICS's sole nexus to the investigation is that it provided consulting services to Certus, and some members of ICS were officers of CertusBank. Therefore, ICS asserts it has not engaged "in an act, practice, or course of business prohibited or made actionable" under the Securities Act, nor has it consented to service of process under the Act. We agree.

Instead, ICS contends it should have been served pursuant to South Carolina's long-arm statute, which provides:

(1) When the law of this State authorizes service outside this State, the service, when reasonably calculated to give actual notice, may be made:

(a) by personal delivery in the manner prescribed for service within the State;

(b) in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction;

(c) by registered or certified mail as provided in Rule 4(d)(8) of the South Carolina Rules of Civil Procedure addressed only to the person to be served and requiring a return receipt showing the acceptance by the defendant. Entry of default and default judgments shall be subject to the conditions of Rule 4(d)(8); or

(d) as directed by the court.

(2) Proof of service outside this State may be made by affidavit of the individual who made the service or in the manner prescribed by law of this State, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction. When service is made pursuant to item (c) of subsection (1) of this section, proof of service shall include a receipt signed by the addressee.

S.C. Code Ann. § 36-2-806 (2003).

Here, the Securities Division used Federal Express to deliver the subpoena to ICS's Charlotte address. This delivery method did not satisfy section 36-2-806(c)'s requirement for service by "registered or certified mail." Consequently, service was improper.[6] *See Roberson v. Southern Finance of South Carolina, Inc.*, 365

---

[6] Rule 4(d), SCRCP, referenced in the long-arm statute, was amended in 2013 to add a provision for service by qualifying commercial delivery service. *See* Rule

S.C. 6, 12, 615 S.E.2d 112, 115 (2005) (reversing a special referee's determination that service was proper when that determination was not supported by the evidence); *Kreke v. Ohio Gear-Wallace Murray Corp.*, 287 S.C. 388, 339 S.E.2d 115 (1986) (per curiam) (reversing based on improper service when an appellant attempted to serve a foreign corporation by a method that did not comply with the relevant statute).[7]

Based on the foregoing analysis, the circuit court's judgment is

**REVERSED**

**LOCKEMY, C.J., and WILLIAMS, J., concur.**

---

4(d)(9), SCRCP. However, the General Assembly has not yet amended § 36-2-806 to incorporate 4(d)(9)'s commercial delivery service provision within the long-arm statute. While this may yet occur, such service is not within our province to recognize unless and until the legislature makes the change. *See e.g.*, § 62-1-401 (including a 2017 amendment to notice provision of the probate code to authorize notice by qualifying commercial delivery service and recognizing such as similar to notice by registered mail or certified mail).

[7] Because our resolution of the service question is dispositive, we decline to address ICS's remaining assignments of error. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding the appellate court need not address appellant's remaining issue when its resolution of a prior issue is dispositive).